**\* NOT FOR PUBLICATION \***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL SLEBODNIK, DAVID YOUSHOCK, AND CLAUDIA METCALF, ON BEHALF OF THEMSELVES AND THE PUTATIVE CLASS, | |
| Plaintiffs, | Civ. Action No. 3:14-CV-03772 (FLW) |
| v. | **OPINION** |
| THE REYNOLDS AND REYNOLDS COMPANY, | |
| Defendant. | |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion filed by The Reynolds and Reynolds Company ("Reynolds" or "Defendant") to dismiss, and in the alternative, a motion to strike all class action allegations in the Complaint filed by plaintiffs Michael Slebodnik ("Slebodnik"), David Youshock ("Youshock"), and Claudia Metcalf ("Metcalf") on behalf of themselves and the putative class (collectively, "Plaintiffs"). Plaintiffs originally filed their Complaint in the Hunterdon County Superior Court of New Jersey, but Defendant removed the putative class action to this Court under the Class Action Fairness Act ("CAFA"). The instant matter arises out of Plaintiffs' allegation that Defendant, a national automotive dealer support company, sells license plate frames that are not compliant with New Jersey motor vehicle laws, as well as some other states. In the motion to dismiss, Defendant argues that Plaintiffs fail to state a claim under the New Jersey Consumer Fraud

Act ("NJCFA") and New Jersey's implied warranty of merchantability. In the motion to strike, Defendant, alternatively, argues that Plaintiffs cannot allege a permissible nationwide class. Plaintiffs oppose both motions. After carefully considering the submissions of the parties, the Court **GRANTS** Defendant's motion to dismiss, and Defendant's motion to strike is **DENIED** as moot.

### BACKGROUND AND PROCEDURAL HISTORY

The named Plaintiffs are all citizens of New Jersey. Id. at ¶¶ 4, 7, 10. In their Complaint, Plaintiffs allege that they purchased or leased their vehicles from the New Jersey based Flemington Car and Truck Company Family of Dealerships ("Flemington Dealerships"). See id. at ¶¶ 5, 8, 11. Specifically, Slebodnik purchased a Jeep Grand Cherokee. Id. at ¶ 5. Youshock leased a Nissan Murano. Id. at ¶ 8. And, Metcalf purchased a Buick Enclave. Id. at ¶ 11. Plaintiffs also allege that the Flemington Dealerships installed a Reynolds' front and rear license plate frame – made by Reynolds – on Plaintiffs' vehicles. See id. at ¶¶ 6, 9, 12. In 2011, Youshock and Metcalf were each issued a citation for "unclear plates" by municipal police officers.[1] See id. at ¶¶ 28, 30. From the Complaint, it does not appear that Slebodnik received a citation in connection with the Reynolds' license plate frames.

---

[1] The relevant statute states that "[a]ll identification marks shall be kept clear and distinct and free from grease, dust, or other blurring matter, so as to be plainly visible at all times of the day and night." N.J.S.A. 39:3-33. In addition, the statute also states, in pertinent part, that:
> No person shall drive a motor vehicle which has a license plate frame or identification marker holder that conceals or otherwise obscures any part of any marking imprinted upon the vehicle's registration plate or any part of any insert which the director, as hereinafter provided, issues to be inserted in and attached to that registration plate marker.

Id.

2

The Flemington Dealerships are located in New Jersey, and they operate multiple motor vehicle dealership locations, which sell new, certified pre-owned, and used vehicles. Id. at ¶¶ 17-18. In total, the Flemington Dealerships sell seventeen different brands of vehicles, both domestic and foreign. Id. In the past six years, Plaintiffs allege that the Flemington Dealerships have sold and leased hundreds of thousands of new, certified pre-owned, and used vehicles. See id. at ¶¶ 24-25.

Reynolds, located in Ohio, Id. at ¶ 13, is a national automobile dealer support company. See id. at ¶ 14. Reynolds designs, manufactures, markets, advertises, and sells dealership software, business forms and supplies, and importantly, license plate frames. Id. Defendant markets its promotional license plate frames to dealerships in order to create word-of-mouth advertising for the dealership. Id. at ¶ 41. Reynolds offers black and white plastic frames in twenty-seven different sizes and styles. Id. at ¶ 42. For example, Plaintiffs allege that Metcalf's license plate frame most closely resembled Reynolds' item number LPF-50, which has a top panel of a half an inch and a bottom panel of three-quarters of an inch. Id. at ¶ 45. In the past six years, Plaintiffs allege that Reynolds "represent[ed] and warrant[ed] that its products are in compliance with all applicable Motor Vehicle Regulations, Statutes, and Laws in those other States." Id. at ¶ 27.

To support a putative class, Plaintiffs cite certain statistics:[2] according to the National Automotive Dealers Association ("NADA"), (i) the United States has 17,635 franchised new vehicle dealerships, which sold 15,500,000 new vehicles in 2013, Id. at ¶¶ 20-21; (ii) 9,400,000 used vehicles were sold in 2012, Id. at ¶ 22; and (iii) New Jersey

---

[2]   In some instances, Plaintiffs cite statistics from multiple years; however, the Court has only highlighted the most recent statistics.

registered 512,551 new vehicles in 2012. Id. at ¶ 23. Plaintiffs further allege that, according to the New Jersey Administrative Office of the Courts, polices officers issued 81,910 tickets for "unclear plates" in 2013. Id. at ¶ 39; see N.J.S.A. 39:3-33. Armed with these facts, "Plaintiff [sic] reasonably estimates that there are hundreds of thousands of class members in the Nationwide Class and tens of thousands of members in the Sub-Class of Persons Receiving Tickets or Summons." Id. at ¶ 53.[3]

On May 8, 2014, Plaintiffs filed their two-count Complaint in the Hunterdon County Superior Court of New Jersey, Law Division. In Count I, Plaintiffs assert that Defendant violated the NJCFA. In Count II, Plaintiffs assert that Defendant breached its implied warranty of merchantability. On June 12, 2014, Defendant removed the putative class action to this Court under the CAFA. Plaintiffs did not object to the removal. On July 3, 2014, Defendant filed the instant motion to dismiss, and in the alternative, the motion to strike all class allegations.

## DISCUSSION

**I. Standard of Review**

In reviewing a motion to dismiss on the pleadings, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action but merely tests

---

[3] In their Complaint, Plaintiffs define a Nationwide Class and a Sub-Class of Persons Receiving Tickets or Summons. See id. at ¶ 50.

the legal sufficiency of the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009); see also Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief ... must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has act unlawfully." Id. (citing Twombly, 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief;" it must " 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that Twombly and Iqbal "do not provide a panacea for defendants," rather, "they merely require that plaintiff raise a 'plausible claim for relief.' " Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 118 (3d Cir.2013) (quoting Iqbal, 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.' " Id. (quoting Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556).

5

**II. Motion to Dismiss**

    **A. Count I – New Jersey Consumer Fraud Act**

In support of their motion, Defendant generally argues that Plaintiffs fail to state a claim under the NJCFA because the Complaint does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). In response, Plaintiffs contends that the Complaint plausibly sets forth the requirements of a NJCFA claim, even under the heightened pleading requirements. Based on the following reasons, the Court finds that Plaintiffs do not state a claim under the NJCFA.

Both Plaintiffs and Defendant do not dispute that New Jersey law applies.[4] Under New Jersey law,[5] the NJCFA is to be liberally construed in favor of the consumer. Cox v. Dears Roebuck & Co., 138 N.J. 2, 14-15 (1994). It is to be "applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011) (internal citations and quotations omitted). The NJCFA was designed to cover "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practice." Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978). To state a claim, a plaintiff must demonstrate: "(1) unlawful conduct by the defendant; (2) an ascertainable

---

[4] If a dispute arises, however, a federal district court must apply the choice of law rules of the forum in which the court sits. Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 293 (D.N.J. 2009).

[5] In a diversity case, the Court "must interpret substantive state law in accordance with rulings of the state's highest court." Mickens v. Ford Motor Co., 900 F. Supp. 2d 427, 435 (D.N.J. 2012). Without specific guidance, the Court must "predict how the state court would resolve the issue." Id. (citing Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220-21 (3d Cir. 2008)).

loss by the plaintiff; and (3) a causal connection between the unlawful conduct and the ascertainable loss." Green v. Morgan Properties, 215 N.J. 431, 453 (N.J. 2013) (citation omitted).

In addition, "[i]t is well-established that NJCFA claims must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)." Lieberson v. Johnson & Johnson Consumer Companies, Inc., 865 F. Supp. 2d 529, 538 (D.N.J. 2011); see Frederico v. Home Depot, 507 F.3d 188, 202-03 (3d Cir. 2007); see also Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d. 84, 98 (D.N.J. 2011) ("Rule 9(b) of the Federal Rules of Civil Procedure applies to claims under the Consumer Fraud Act"). Pursuant to Fed. R. Civ. P. 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice" of the specific misconduct. Frederico, 507 F.3d at 200. To satisfy the heightened standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. Furthermore, each individual plaintiff in a class action must independently satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Crozier v. Johnson & Johnson Consumer Companies, Inc. 901 F. Supp. 2d. 494, 506 (D.N.J. 2012).

### i. Unlawful Conduct

In the instant matter, Plaintiffs assert two theories of unlawful conduct under the NJCFA. First, Plaintiffs argue that Defendant engaged in unconscionable commercial practices because Defendant knew that the license plates did not comply with some state laws, but it continued to sell the license plate frames to dealerships.[6] Second, Plaintiffs also

---

[6] In their moving papers, Defendant argues that Plaintiffs originally asserted a theory of an affirmative misrepresentation in their Complaint, but now Plaintiffs have shifted to the theory of unconscionable commercial practice.

argue that Defendant made a knowing omission because Defendant deliberately omitted material information regarding the defective nature of the license plate frames. In response, Defendant argues that Plaintiffs do not sufficiently allege that Defendant engaged in any unlawful conduct under the NJCFA.

New Jersey courts have intentionally left the definition of unlawful conduct "open-ended, in order to capture the myriad schemes that human ingenuity may engender." Mickens v. Ford Motor Co., 900 F. Supp. 2d 427, 436 (D.N.J. 2012). In addition, the NJCFA does not require a direct relationship, whether it is called privity or not, between the plaintiff and the defendant. See Zafarana v. Pfizer, Inc., 724 F. Supp. 2d 545, 556 (E.D. Pa. 2010) (stating that "the plaintiff need not be in privity with the defendant in order to bring a claim" under the NJCFA); see also Katz v. Schachter, 251 N.J. Super. 467, 474 (App. Div. 1991) (stating that "privity is not a condition precedent to recovery under the [NJCFA]"). Pursuant to the NJCFA, an unlawful practice is defined as:

> [t]he act, use or employment by any person of an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

---

An affirmative misrepresentation that violates the NJCFA "is 'one which is material to the transaction and which is a statement of fact, found to be *false*, made to induce the buyer to make the purchase.'" Viking Yacht Co. v. Composite One LLC, 385 Fed. App'x 195, 200 (3d Cir. 2010) (quoting Ji v. Palmer, 333 N.J. Super. 451, 462 (App. Div. 2000)) (emphasis in the original).

Even if Plaintiffs made an affirmative misrepresentation argument, the Court finds that Plaintiffs' affirmative misrepresentation argument fails because Plaintiffs do not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

8

N.J.S.A. § 56:8-2.[7] In accordance with the NJCFA, the requirement of unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violations of regulations.[8] Smajlaj, 782 F. Supp. 2d at 97. If one of the three general categories is proven, then unlawful conduct is established. See Francis E. Parker Mem'l Home, Inc. v. Georgia_Pac. LLC, 945 F. Supp. 2d 543, 560 (D.N.J. 2013).

First, "there are six types of affirmative acts that are deemed unlawful: unconscionable commercial practices, acts of deception, fraud, false pretenses, false promises, and affirmative misrepresentation." Viking Yacht Co. v. Composite One LLC, 385 Fed. App'x 195, 200 (3d Cir. 2010) (citing N.J.S.A. § 56:8-2). Here, Plaintiffs contend that Defendant engaged in unconscionable commercial practices. Specifically, Plaintiffs allege "that Defendant knew the license plate frames were illegal and yet continued to sell them for installation on vehicles purchased or leased by Plaintiffs and the putative class." Pls.' Br. in Opp. at pg. 9; see Pls.' Compl. ¶¶ 72-73.

The New Jersey Supreme Court has reasoned "that unconscionability is 'an amorphous concept obviously designed to establish a broad business ethic.' " Cox, 138

---

[7] "The term 'person' as used in the NJCFA includes, inter alia, natural persons, partnerships, corporations, companies, trusts, business entities and associations." Lieberson, 865 F. Supp. 2d at 538 (citing N.J.S.A. § 56:8-1(d)). The term "advertisement" is defined as "the attempt… to induce directly or indirectly any person to enter or not enter into an obligation or acquire any title or interest in any merchandise or increase the consumption thereof or to make any loan." N.J.S.A. § 56:8-1(a). And, the term "merchandise" is defined as "goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. § 56:8-1(c).

[8] As to the third category, it "incorporates and creates a cause of action for violations of regulations promulgated under" the NJCFA. Mickens, 900 F. Supp. 2d at 436. "Such regulations may incorporate, and define as unlawful practices, violations of other statutes and regulations that were designed to protect consumers." Id. Here, Plaintiffs do not allege that Defendant violated any of the regulations promulgated under the NJCFA. Accordingly, the Court will not address the third category of unlawful conduct.

N.J. at 18 (quoting Kugler v. Romain, 58 N.J. 522, 543 (1971)). In that connection, an unconscionable commercial practice generally "implies [a] lack of 'good faith, honesty in fact and observance of fair dealing.' " Id. (quoting Kugler, 58 N.J. at 544). Critically, an unconscionable commercial practice "must be misleading and stand outside the norm of reasonable business practice in that it will victimize the average customer." Smajlaj, 782 F. Supp. 2d. at 98; see Cox, 138 N.J. at 18 ("The capacity to mislead is the prime ingredient of all types of consumer frauds"). New Jersey courts, however, "have been careful to constrain the [NJCFA] to 'fraudulent, deceptive or other similar kinds of selling or advertising practices.' " D'Agostino v. Maldonado, 216 N.J. 168, 189 (2013) (citing Daaleman, 77 N.J. at 271).

In the instant matter, Defendant designs, manufactures, markets, advertises, and sells twenty-seven different types of promotional license plate frames, which vary in size. Defendant exclusively sells its promotional license plate frames to dealerships as a form of advertising for the dealership. Plaintiffs allege that Defendant knew that the license plate frames were illegal, and thus, Defendant engaged in unconscionable commercial practices.[9] In their Complaint, Plaintiffs attached Defendant's brochure to dealerships, which provides ample information about the license plate frames sold to dealerships, such as the dimensions of all twenty-seven license plate frames.[10] See Pls.' Compl., Ex. F. In

---

[9] Plaintiffs generally contend that Defendant's license plate frames were illegal at the time of sale, specifically in New Jersey. Under N.J.S.A. 39:3-33, however, the motor vehicle statute prohibits driver conduct, not manufacturer conduct. As such, Defendant did not violate the aforementioned motor vehicle statute by selling their license plate frames within the state of New Jersey.

[10] The Court can consider this brochure on a motion to dismiss because it is attached to the Complaint. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

addition, the brochure also states, "Check with your state legislature on license plate display laws." See id. In short, Defendant provided prospective customers, i.e., the dealerships, with dimensions of the license plate frames, and Defendant expressly notified the dealers that the license plate frames may not comply with the motor vehicle statutes of some states. Therefore, based on the face of the Complaint and the documents attached, Plaintiffs cannot allege an affirmative act that Defendant engaged in conduct that was misleading or standing outside the norm of reasonable business practice. See Smajlaj, 782 F. Supp. 2d. at 98.

Second, Plaintiffs allege that Defendant "knowingly concealed, suppressed and/or omitted significant or important facts, namely that the license plate frames were not in compliance with New Jersey law, N.J.S.A. 39:3-33, and the laws of other States, purposely or with the intent that Plaintiffs and [putative class members] would rely on that concealment, suppression and/or omission so that Reynolds could generate millions in revenue by selling the license plate frames" to dealerships.[11] Pls.' Compl. ¶ 75. Plainly stated, Plaintiffs allege that Defendant engaged in a knowing omission because Defendant did not inform Plaintiffs that the license plate frame may or may not comply with New Jersey state law.

In the context of an omission, the heightened pleading requirements are relaxed, and a plaintiff may generally allege the essential elements of the omission under the NJCFA. See Harnish v. Widener Univ. Sch. of Law, 931 F. Supp. 2d 641, 652 (D.N.J.

---

[11] The Court notes that Plaintiffs' allegations of a knowing omission mirror Plaintiffs' allegations of unconscionable commercial practices, insofar as Plaintiffs allege that Defendant withheld information concerning the license plate frames from the Flemington Dealerships, and consequently, Plaintiffs.

11

2013). "While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged." Maniscalco v. Brother Intern. Corp., 627 F. Supp. 2d 494, 500 (2010)

A knowing omission "occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." Mickens, 900 F. Supp. 2d at 441 (citing Arcand, 673 F. Supp. 2d at 297). A knowing omission "must be made 'in connection' with the sale or advertisement of a product or service." Arcand, 673 F. Supp. 2d at 296-97 (citing Castro v. NYT Television, 370 N.J. Super. 282, 294 (App. Div. 2004)). Further, "a plaintiff must show that the defendant acted with knowledge, thereby making intent an *essential element* of the fraud." Maniscalco, 627 F. Supp. 2d at 499 (citation and quotations omitted) (emphasis in the original).

In connection with its allegation of knowing omission, Plaintiffs must allege the essential element of knowledge. See id. In other words, Plaintiffs must allege that Defendant knowingly concealed the fact that its license plate frames did not comply with New Jersey state motor vehicle laws. Based on their own pleadings, Plaintiffs cannot allege such a fact. Defendant's brochure clearly states, "Check with your state legislature on license plate display laws." Pls.' Compl., Ex. F. In addition, Defendant provided the dimensions of all twenty-seven license plate frames in their brochure. Id. As such, because all the pertinent information were provided in the brochure, including the warning regarding statutory compliance, the Court finds that Plaintiffs cannot allege any wrongful knowing omission on Defendant's part.

### ii. Ascertainable Loss

Assuming that Plaintiffs sufficiently alleged unlawful conduct, the Court must still determine whether Plaintiffs have alleged an ascertainable loss. The NJCFA "does not define 'ascertainable loss' and there is no relevant legislative history." Smajlaj, 782 F. Supp. 2d at 99 (citing Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 247 (2005)). However, a claim of an ascertainable loss is a prerequisite in the plain language of the NJCFA. Perez v. Professionally Green, LLC, 215 N.J. 388, 401 (2013). "An 'ascertainable loss' is 'either an out-of-pocket loss or a demonstration of loss in value' that is 'quantifiable or measureable.' " Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 606 (3d Cir. 2012) (quoting Thiedemann, 183 N.J. at 249); see Lieberson , 865 F. Supp. 2d at 541.

In the instant matter, Plaintiffs allege that they suffered "an ascertainable loss with respect to the replacement cost of the illegal license plate frames, statutory fines, interest, attorney's fees and increased insurance charges." Pls.' Compl., ¶ 76. Essentially, Plaintiffs assert the out-of-pocket loss theory. See Dicuio v. Brother Intern. Corp., 2012 WL 3278917, at *7 (D.N.J. Aug. 9, 2012) ("The out-of-pocket rule applies when a plaintiff can demonstrate that he paid money, and is now, out-of-pocket"). Generally, Plaintiffs do not need to "plead ascertainable loss with pinpoint specificity." Mickens, 900 F. Supp. 2d at 446. However, Plaintiffs cannot assert "unsupported conclusions concerning [his or her] alleged loss." Lieberson, 865 F. Supp. 2d at 541.

With that said, Plaintiffs do not allege with any degree of particularity their claims of ascertainable loss relating to the cost of interest, attorney's fees, and increased insurance charges.  Plaintiffs also do not allege that they paid for the license plate frames. See id. ("Plaintiff has not alleged the price she paid for the Products in either 2008 or 2010, nor

13

has she alleged the price of the Products generally"). In that connection, Plaintiffs have not alleged the cost of any other replacement license plate frames, see id. ("Plaintiff has not alleged the identity or cost of any allegedly comparable products"), or even allege that the purchase price of their vehicles included the cost of the license plate frames. However, that being said, I do find that plaintiffs Youshock and Metcalf have sufficiently alleged ascertainable loss because they allege that they paid a statutory fine as a result of having Defendant's license plate frames installed on their vehicles. As to plaintiff Slebodnik, who has not alleged that he paid a find, no ascertainable loss has been pled with particularity.

### iii.  Causal Connection

Assuming, arguendo, that Plaintiffs sufficiently alleged an unlawful conduct and an ascertainable loss, the Court must determine whether a causal connection exists. Plaintiffs argue that the Complaint plausibly alleges the causal connection requirement. In response, Defendant contends that Plaintiffs cannot satisfy the heightened pleading requirement.

To state a claim under NJCFA, a plaintiff must allege a causal relationship between a defendant's unlawful conduct and a plaintiff's ascertainable loss. Arcand, 673 F. Supp. 2d at 303; see Mickens, 900 F. Supp. 2d at 437 (stating that the statute requires that the claimed loss have occurred as a result of the unlawful conduct). Relatedly, "the alleged unlawful practice must be a proximate cause of the plaintiff's ascertainable loss." Marcus, 687 F.3d at 606. However, "the NJCFA does not require that an allegedly unlawful conduct serve as the lone cause of Plaintiffs' loss, but merely that it be a cause." Arcand, 673 F. Supp. 2d at 304. In addition, a plaintiff is not required to prove reliance. Marcus, 687 F.3d at 606. Since reliance is not required, the NJCFA "does not require proof that a consumer

would not have purchased a product absent the alleged unlawful practice or even proof that the unlawful practice played a substantial part in his or her decisionmaking." Id.

To properly plead a causal connection, a plaintiff "must allege facts establishing a causal [connection] with the particularity required by Rule 9(b)." Arcand, 673 F. Supp. 2d at 303; see Frederico, 507 F.3d at 200. For illustration, in Dewey v. Volkswagen, the district court concluded that the plaintiff did not sufficiently plead a causal connection between the defendant's alleged affirmative acts and plaintiff's ascertainable loss because plaintiff's allegations were in "the most general and conclusory terms." Dewey v. Volkswagen, 558 F. Supp. 2d 505, 526 (D.N.J. 2008); see Glass v. BMW of N. Am., LLC, 2011 WL 6887721, at * 12 (D.N.J. Dec. 29, 2011) (holding that "Plaintiff has failed to plead a causal [connection] between her injuries and [defendant's] unlawful conduct with the particularity required by Rule 9(b)").

In the instant matter, Plaintiffs allege that "[t]he unlawful and unconscionable commercial practice, deception, fraud, false promises, and misrepresentations by Reynolds as well as its knowing concealments, suppression and/or omission of significant or important facts, contrary to the New Jersey CFA, have caused Plaintiffs and the Classes to suffer an ascertainable loss… because the license plate frames… sold by Reynolds" did not comply with some states' motor vehicle statutes and regulations. Pls.' Compl., ¶ 76. However, Plaintiffs plead a causal connection in only general and vague terms. See Dewey, 558 F. Supp. 2d at 526. Critically, Plaintiffs do not allege any facts that connect Defendant's alleged unlawful conduct – selling license plate frames that are not in compliance with some state motor vehicle laws – and Plaintiffs' alleged ascertainable loss. For example, Plaintiffs do not allege that Plaintiffs have even seen or read Defendant's

15

advertising on license plate frames. See id. at 526-27 (reasoning that plaintiffs "[did] not allege when the statements were made or at what point – if ever – each Plaintiff was exposed to one or more of the statements"); see also Crozier, 901 F. Supp 2d at 507-08. Indeed, based on the language of Defendant's brochure, the marketing material was directed only towards car dealerships, not to individual customers. Plaintiffs have not alleged that there were any other brochures or advertisements that induced them to purchase Defendant's license plate frames. Even more compelling, Plaintiffs did not directly purchase the license plate frames, but rather, the Flemington Dealerships purchased and installed the license plate frames. In that regard, Plaintiffs do not allege how the marketing materials sent to the car dealership have any bearing on Plainiffs' decision to purchase the license plate frames vis-à-vis the automobile. Accordingly, the Court finds that Plaintiffs do not allege a causal connection with sufficient particularity required by Rule 9(b).[12] See Arcand, 673 F. Supp. 2d at 303; see Frederico, 507 F.3d at 200.

### B. Count II – Implied Warranty of Merchantability

In their Complaint, Plaintiffs generally allege that Defendant breached the implied warranty of merchantability because Defendant sold license plate frames that were not fit for the ordinary purpose for which they were manufactured. See Pls.' Compl. ¶ 78. In particular, Plaintiffs argue that Defendant "breached the implied warranty of merchantability as the defective license plate frames were illegal and not in compliance" with some state motor vehicle laws, including New Jersey. Id. at ¶ 80. In their motion to

---

[12]   In the moving papers, Defendant argued that Plaintiffs do not sufficiently allege the causal connection because Defendant did not direct any conduct at Plaintiffs, and thus, no causal connection exists between Defendant and Plaintiffs. In response, Plaintiffs argued that direct conduct is not required under the NJCFA. Since Plaintiffs fail to meet the requirements of 9(b), the Court does not need to address this argument.

dismiss, Defendant argues that its license plate frames are fit for their ordinary purpose, and thus, Defendant did not breach the implied warranty of merchantability. For the following reasons, Plaintiffs fail to state a claim for breach of implied warranty of merchantability.

Under New Jersey law, the state "implies a warranty of merchantability in every contract for the sale of goods." Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 454 (D.N.J. 2012). The implied warranty "provides for a minimum level of quality." Lieberson, 865 F. Supp. 2d at 542 (citation and quotations omitted). The purpose of the implied warranty is "to protect buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." Reese v. Ford Motor Co., 499 Fed. App'x 163, 166 (3d Cir. 2012). Plainly stated, the implied warranty "simply means that the thing sold is reasonably fit for the *general* purpose for which it is manufactured and sold." Lieberson, 865 F. Supp. 2d at 542 (citation and quotations omitted) (emphasis in the original). In addition, "New Jersey does not require privity between a plaintiff and defendant for such claims." Montich, 849 F. Supp. 2d at 454.

New Jersey courts typically find the product to be unfit for its ordinary purpose in three general types of defects: "manufacturing defects, design defects, and failure to give the buyer proper instruction with respect to the goods."[13] Lieberson, 865 F. Supp. 2d at 542 (citation and quotations omitted). Here, Plaintiffs allege that the license plate frames are unfit for their ordinary purpose because of a design defect, not a manufacturing defect or a failure to give proper instruction. See Pls.' Compl. ¶ 80. Under New Jersey law, a

---

[13]  A manufacturing defect is a manufacturing glitch that renders some of the goods unfit for their ordinary purpose; conversely, a design defect is a defect that renders all of the goods unfit for their ordinary purpose. See Lieberson, 865 F. Supp. 2d at 543.

17

plaintiff asserting a design defect theory must show: "(1) the product was defective; (2) the defect existed when the product left the manufacturer's control; and (3) the defect caused injury to a reasonably foreseeable user or victim." Id. at 543. As such, "the ultimate inquiry is whether the manufacturer acted in a reasonably prudent fashion in designing and fabricating the product." Id. (citation and quotations omitted).

At the outset, the Court finds it appropriate to consider the general purpose of license plate frames. See id. Plaintiffs acknowledge that the general purpose of a license plate frame is to create word-of-mouth advertising for dealerships. See Pls.' Compl. ¶ 41. Here, the Flemington Dealerships purchased the license plate frames as an advertising tool. Plaintiffs did not directly purchase the license plate frames. Rather, Plaintiffs purchased or leased vehicles that happened to have a promotional license plate frame on it. With that said, the core contention of Plaintiffs is that Defendant sold license plate frames that were illegal, and thus, the license plate frames were defectively designed. See id. at ¶ 80. Under N.J.S.A. 39:3-33, however, the motor vehicle statute prohibits driver conduct, not manufacturer conduct. As such, Defendant did not violate the aforementioned motor vehicle statute by selling its license plate frames within the state of New Jersey. Since Plaintiffs have failed to show that the license plate frames were illegal to sell, Defendant's license plate frames were not defectively designed. Moreover, Defendant offers twenty-seven different sizes and styles, and it warns prospective customers that their product may not comply with some state motor vehicle laws, thus leaving it to the dealerships to determine which frames to purchase. Since the license plate frames did not suffer a design defect, the Court finds that Plaintiffs have failed to state a claim for breach of the implied warranty of merchantability because Defendant's license plate frames are reasonably fit

for the general purpose for which they are manufactured and sold. Lieberson, 865 F. Supp. 2d at 542-43.

## CONCLUSION

In sum, the Court finds that Plaintiffs neither state a claim for a violation of the NJCFA nor a claim for breach of the implied warranty of merchantability.  Since Plaintiffs do not state a claim on either counts, the Court need not address Defendant's alternative motion to strike class allegations. Accordingly, the Court **GRANTS** Defendant's motion to dismiss and **DENIES** Defendant's motion to strike as moot.

DATED:	November 20, 2014		/s/ Freda L. Wolfson
						Freda L. Wolfson
						United States District Judge